# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1674 | **DATE** | 11/21/2002 |
| **CASE TITLE** | Doing Steel, Inc. vs. Castle Construction Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order: Castle's motion to dismiss Counts II and III of Doing Steel's complaint (13-1) is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 2 2 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 20 |
| | Copy to judge/magistrate judge. | | 11/21/2002 | |
| | | 02 NOV 22 AM 8:26 | date mailed notice | |
| | courtroom | | | |
| GL | deputy's initials | Date/time received in central Clerk's Office | GL mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOING STEEL, INC., a Missouri corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 02 C 1674 |
| | ) | |
| CASTLE CONSTRUCTION CORPORATION, | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff, Doing Steel, Inc. ("Doing Steel"), filed a three count Amended Complaint ("Complaint") against Defendant Castle Construction Corporation ("Castle") alleging breach of contract (Count I), conversion (Count II), and breach of fiduciary duty (Count III). Presently before us is Castle's motion to dismiss Counts II and III. For the reasons stated below, we grant Castle's motion as to both Counts.

### I. BACKGROUND

The following facts are adopted from Doing Steel's complaint and are assumed to be true for the purpose of deciding this motion. On or before September 8, 1999, Castle entered into a contract with Illinois School District No. 148 ("District No. 148") to build the New Lincoln School ("Project") located at 14151 Lincoln Avenue, Dolton, Illinois. On September 8, 1999, Castle and Doing Steel entered into a written Subcontract Agreement ("Subcontract") which required Doing Steel to provide "all work necessary or incidental to complete the labor, material, equipment, and supplies necessary to . . . furnish and install all structural and miscellaneous steel work" on the Project.[1] Subcontract at Art. 15, §2. The

---

[1] Doing Steel attached the Subcontract to its Complaint as Exhibit A.

Subcontract provided that Castle was to pay Doing Steel $721,000.00 as consideration for Doing Steel's work performed pursuant to the Subcontract.

Throughout the course of the Project, it was the sole duty and responsibility of Castle to ensure and certify to District No. 148 the proper and complete execution of all work on the Project. Pursuant to the project specifications, the Subcontract, and the contract entered into between Castle and District No. 148, all of the contractors and subcontractors performing work on the Project had a right to progress payments throughout the course of performance of the Project. Castle submitted twenty Breakdown Sheets, Contractor's Affidavits, and Certificates for Payment to District No. 148 for payment on behalf of all the contractors and subcontractors, including Doing Steel. Each of Castle's twenty Contractor's Affidavits identified the amount of work completed by each contractor and subcontractor during a particular time period, and identified the amount of money Castle was seeking from District No. 148 on behalf of each contractor and subcontractor, including Doing Steel. According to the Breakdown Sheets, Certificates for Payment, and the Contractor's Affidavits Castle provided, District No. 148 issued nineteen separate checks, totaling $6,373,509.70. Each check District No. 148 issued correlated with the dollar amounts each Contractor's Affidavit identified as being owed to each contractor and subcontractor, including Doing Steel.

Under the Subcontract, Castle was required to make payments to Doing Steel for satisfactory performance of its work no later than ten business days after Castle received progress payments from District No. 148. Doing Steel consistently performed and completed work in accordance with the construction specifications contained in the Subcontract and Change Orders. Castle paid Doing Steel $510,300.00 for the work it performed on the Project before January 31, 2000. Castle has not paid Doing Steel for its work on the Project after that date.

Nonetheless, Castle continued to request and receive payment from District No. 148 for the work

2

Doing Steel performed after January 31, 2000. On March 3, 2000, July 7, 2000, and July 31 of 2000, Castle prepared, signed, and had notarized Contractor's Affidavits that identified the payments due to all contractors and subcontractors, including Doing Steel. According to the Affidavits, Doing Steel was due a total of $114,520.50.[2] Castle sent District No. 148 each Affidavit along with a Breakdown Sheet and Certificate for Payment. District No. 148 then paid Castle on behalf of all contractors and subcontractors named in each Affidavit, including Doing Steel.[3] Each check District No. 148 issued correlated with the dollar amounts each Contractor's Affidavit identified as being owed to each contractor and subcontractor, including Doing Steel. Although Castle received a total of $114,520.50 on Doing Steel's behalf, it did not subsequently pay Doing Steel.

On January 16, 2001, Doing Steel transmitted a Contract Surety Bond Affidavit of Claim to the Surety, Travelers Casualty and Surety Company of America, in an effort to obtain full payment for services rendered.[4] On or about February 20, 2001, in a further effort to obtain full payment, Doing Steel served District No. 148 and the Surety with a Notice of Claim Under the Contractor's Bond.[5] Doing Steel filed an Amended Complaint ("Complaint") against Castle on July 15, 2002, alleging breach of contract (Count I), conversion (Count II), and breach of fiduciary duty under Section 21.02 of the Illinois

---

[2] The March 3, 2000 Affidavit reported that Doing Steel was due $39,299.40. The July 7, 2000 Affidavit stated that Doing Steel was due $52,721.10. The July 31 Affidavit relayed that Doing Steel was due $22,500.00. Thus, the total Castle claimed was due to Doing Steel amounts to $114,520.50.

[3] Doing Steel attached to its Complaint, as Exhibits C, D, and E, the March 3, 2000, July 7, 2000, and July 31, 2000 Contractor's Affidavits, Breakdown Sheets, and Certificates for Payment, as well as the checks District No. 148 subsequently issued to Castle.

[4] Doing Steel attached the Contract Surety Bond Affidavit of Claim to its Complaint as Exhibit F.

[5] Doing Steel attached the Notice of Claim Under the Contractor's Bond to its Complaint as Exhibit G.

3

Mechanics Lien Act, 770 Ill. Comp. Stat. Ann. 60/21.02 (2002) (Count III). Castle subsequently filed a motion to dismiss Counts II and III.

## II. ANALYSIS

### A. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to decide the adequacy of the complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, we must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995), *aff'd* 161 F.3d 443 (7th Cir. 1998), *cert. denied* 528 U.S. 810 (1999). Therefore, a complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46.

### B. Count II: Conversion

Under Illinois law, conversion is an intentional, unauthorized act that deprives a person of his property. *See In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985). To state a claim for conversion, a plaintiff must show "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the property of another; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property; and (4) a demand by plaintiff of possession thereof." *Eggert v. Weisz*, 839 F.2d 1261, 1264 (7th Cir. 1988) (quoting *de St. Aubin v. Johnson*, 502 N.E.2d 360, 364 (Ill. App. Ct. 1986)).

**There are, however, limited circumstances under which money can be the subject of a conversion claim.** *See In re Thebus*, **483 N.E.2d at 1260-1261. Generally, money is not recoverable under the tort of conversion unless the sum of money can be described as specific**

chattel. *See id.* Money may be characterized as specific chattel if it is "a specific fund or specific money in coin or bills." *Sutherland v. O'Malley*, 882 F.2d 1196, 1200 (7th Cir. 1989) (citing *Mid-America Fire & Marine Ins. Co. v. Middleton*, 468 N.E.2d 1335, 1339 (Ill. App. Ct. 1984). Although it is not necessary that the money be specifically segregated or earmarked, the money must be a determinate amount and identifiably distinct. *See 3 Corn Corp. v. Electronics Recovery Specialists, Inc.*, 104 F.Supp.2d 932, 940 (N.D.Ill. 2000); *see also Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater*, 668 N.E.2d 1129, 1134 (Ill. App. Ct. 1996). Furthermore, the money at issue must have "at all times belonged to the plaintiff." *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) (quoting *In re Thebus*, 483 N.E.2d at 1261). Indeed, a conversion action cannot successfully be maintained "for money represented by a general debt or obligation." *In re Thebus*, 483 N.E.2d at 1261.

Castle contends that Doing Steel's Complaint fails to state a claim for conversion. *See* Def. Memo. at 3-7. We agree. The money at issue in this case does not fall within the limited circumstances under which money can be subject to a claim for conversion. While the money in question may be considered specific chattel as a specific fund,[6] it did not at all times belong to Doing Steel. In fact, the money only represents an obligation Castle had under the Subcontract

---

[6]Doing Steel argues that the money in question is a specific fund because it is a determinate amount ($114,520.50) that was distinctly identified by Castle's Contractors' Affidavits. Castle counters that the money is not a specific fund because it was not segregated from the payments it received on behalf of all other contractors and subcontractors. *See* Def. Memo. at 4. Yet courts have allowed conversion claims to proceed even though the converted money was not segregated from other funds. *See Roderick*, 668 N.E.2d at 1137 (allowing conversion claim even though funds were not segregated); *see also European Am. Bank v. Prime Leasing Co.*, 2001 WL 56783, at *2 (N.D.Ill. 2001) (allowing conversion claim even though converted sums were received in three payments). More important to our analysis, however, is whether the money at all times belonged to Doing Steel and whether the money represents an obligation Castle had under the Subcontract to pay Doing Steel. We discuss those issues *infra*.

to pay Doing Steel upon the *"satisfactory performance"* of its work. Subcontract at Art. 4 (regarding contract price), Art.5, §2.5 (regarding progress payments) (emphasis added).

According to the Subcontract, Doing Steel was to provide "all work necessary or incidental to complete the labor, material, equipment and supplies necessary to ... furnish and install all structural and miscellaneous steel work" on the Project. *Id.* at Art.15, §2. Doing Steel agreed that time was of the essence for both parties, and that it would comply with Castle's schedule of work. *See id.* at Art.3, §1. In turn, Castle was to pay Doing Steel $721,000.00 "for the *satisfactory performance*" of its work. *Id.* at Art.4 (emphasis added). Castle would make progress payments to Doing Steel for the *"satisfactory performance"* its work no later than ten business days after Castle received payment from District No. 148 for such work. *Id.* at Art.5, §2.5. Castle could assess liquidated and other damages against Doing Steel "for delay beyond the completion date" set forth by the Subcontract. *Id.* at Art.6, §5. Castle could also withhold payment from Doing Steel for costs associated with failure to perform in accordance with the Subcontract. *See id.* at Art.10, §§1.1, 1.2, 2.2.

On March 3, July 7, and July 31 of 2000, Castle submitted Contractor's Affidavits to District No. 148 in which it identified the payments due to all contractors and subcontractors, including Doing Steel. *See* Compl., Count II, ¶¶21-34. According to the Affidavits, Doing Steel was due a total of $114,520.50. *See id.* at ¶¶ 21, 26, 31. Castle sent District No. 148 each Affidavit along with a Breakdown Sheet and Certificate for Payment. *See id.* at ¶¶ 22, 27, 32. District No. 148 then paid Castle on behalf of all contractors and subcontractors named in each Affidavit, including Doing Steel. *See id.* at ¶¶23, 28, 33. Each check District No. 148 issued correlated with the dollar amounts each Contractor's Affidavit identified as being owed to each contractor and subcontractor. *See id.* at ¶16. While Castle received a total of $114,520.50 on Doing Steel's behalf,

it did not subsequently pay any of that amount to Doing Steel. *See id.* at 37-38.

Regardless of whether Castle was justified in failing to pay Doing Steel, the terms of the Subcontract make clear that the money in question did not at all times belong to Doing Steel. Doing Steel was entitled to the money only upon the successful performance of its duties. As a result, Doing Steel cannot successfully maintain a conversion action against Castle for money represented by such an obligation.[7] *See In re Thebus*, 483 N.E.2d at 1261; *see also Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002).

C. Count III: Breach of Fiduciary Duty Under Illinois Mechanics Lien Act

Doing Steel claims that a fiduciary relationship arose between Castle and Doing Steel under Section 21.02 of the Illinois Mechanics Lien Act, 770 Ill. Comp. Stat. Ann. 60/21.02, when Castle received $114,520.50 in payments from District No. 148 on Doing Steel's behalf. *See* Compl., Count III at ¶¶27-28. Castle purportedly breached its fiduciary duty when it failed to pay Doing Steel any of that money. *See* Compl., Count III at ¶30. Castle asserts that a fiduciary relationship never arose between itself and Doing Steel under the statute. Def. Reply at 2-5. Consequently, Castle contends that Doing Steel's Complaint fails to state a claim for breach of fiduciary duty. *See id.* We agree.

In examining Doing Steel's Complaint, we look first to Section 21.02 of the Illinois

---

[7]Indeed, courts have been most reluctant to allow conversion claims to proceed where, as here, the defendant essentially collected money on behalf of the plaintiff but later withheld it in violation of terms of the contract. *See Eggert v. Weisz*, 839 F.2d 1261, 1264 (7th Cir. 1988) (denying conversion claim where defendant sold plaintiff's stamp collection at auction but later withheld payment); *see also Sutherland v. O'Malley*, 882 F.2d 1196, 1200-1201 (7th Cir. 1989) (denying conversion claim where defendant deposited proceeds from legal settlement in his account but later withheld payment to co-counsel); *3 Com Corp. v. Electronics Recovery Specialists, Inc.*, 104 F.Supp.2d 932, 940 (N.D.Ill. 2000) (denying conversion claim where defendant was required under contract to pay plaintiff 70% of value of scrap metal collected but later withheld payment).

7

Mechanics Lien Act. We must interpret the statute as would the Illinois Supreme Court. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also United States Fire Ins. Co. v. Barker Car Rental*, 132 F.3d 1153, 1156 (7th Cir. 1997). In Illinois, the pertinent principles of statutory construction are clear. The primary goal in interpreting the language of a statute "is to ascertain and give effect to the legislature's intent." *Michigan Ave. Nat'l Bank v. County of Cook*, 732 N.E.2d 528, 535 (Ill. 2000). The best indication of the legislative intent is the statute's plain language. *See Yang v. City of Chicago*, 745 N.E.2d 541, 545 (Ill. 2001). When the language is "clear and unambiguous" the judiciary must apply the statute without resort to further tools of statutory construction. *Davis v. Toshiba Mach. Co., America*, 710 N.E.2d 399, 401 (Ill. 1999).

Section 21.02 of the Illinois Mechanics Lien Act, 770 Ill. Comp. Stat. Ann. 60/21.02 provides:

> (a) Any ... contractor ... *who requests or requires the execution and delivery of a waiver of mechanics lien by any person who furnishes labor, services, or materials* for the improvement of a lot or tract of land in exchange for payment or the promise of payment, *shall hold in trust the unpaid sums subject to the waiver of mechanics lien*, as trustee for the person who furnished the labor, services, or materials. (emphasis added).
>
> (c) Any ... contractor ... who knowingly retains or uses the money held in trust under this Section or any part thereof, for any purpose other than to pay those persons for whom the moneys are held in trust, shall be liable to any person who successfully enforces his or her rights under this Section for all damages sustained by that person.

Doing Steel argues that Section 21.02 creates a fiduciary relationship between a contractor and subcontractor upon the contractor's receipt of money on behalf of the subcontractor, regardless of whether the subcontractor has issued the required lien waiver. We disagree. The plain language of the statute is clear and unambiguous. A contractor "who requests or requires the execution and delivery of a waiver of mechanics lien" by a subcontractor "shall hold in trust

8

the unpaid sums [due to that subcontractor] subject to the waiver of mechanics lien." 770 Ill. Comp. Stat. Ann. 60/21.02(a). The subcontractor must issue the required lien waiver in order to create a fiduciary relationship between itself and contractor. Castle required Doing Steel to "provide . . . lien or claim waivers" to Castle "prior to issuance of payment" to Doing Steel. Subcontract, Art.5, §1.5. Doing Steel concedes that it never issued lien waivers for the money in question. See Pl. Resp. at 6; see generally Compl., Count III. Thus, under the plain language of Section 21.02(a), a fiduciary relationship never arose between Castle and Doing Steel.[8]

D. CONCLUSION

For the foregoing reasons, Castle's motion to dismiss Counts II and III of Doing Steel's Complaint is granted. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated  11/2/02

---

[8] Because the plain language of the statute is clear and unambiguous, we need not look to the legislative history to interpret the statute's meaning. See Davis, 710 N.E.2d at 401. Nonetheless, the legislative history supports our interpretation of the statute on its face. The 90th Illinois General Assembly passed House Bill 1111, which set forth the language contained in Section 21.02. See State of Illinois 90th General Assembly House of Representatives Transcription Debate, 48th Leg. Day at 224; see also State of Illinois 90th General Assembly Regular Session Senate Transcript, 45th Leg. Day, at 38. Representative David R. Leitch, sponsor of House Bill 1111, explained that the "Bill amends the Mechanic Liens Act and it requires that *when a lien waiver has been issued* that the contractor put this money aside designated in an account." House of Representatives Transcription Debate, 48th Leg. Day at 221.

9