# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1674 | **DATE** | 5/28/2003 |
| **CASE TITLE** | Doing Steel, Inc. vs. Castle Construction Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Doing Steel's motion for leave to file its second amended complaint (27-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 29 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 40 |
| | Copy to judge/magistrate judge. | | 5/28/2003 | |
| | | | date mailed notice | |
| GL | courtroom deputy's initials | | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| DOING STEEL, INC., a Missouri corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 02 C 1674 |
| ) | |
| CASTLE CONSTRUCTION CORPORATION, ) | |
| an Illinois corporation, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is the motion of Plaintiff, Doing Steel, Inc. ("Doing Steel"), for leave to file its second amended complaint against Defendant, Castle Construction Corporation ("Castle"). For the reasons set forth below, we deny Doing Steel's motion.

### I. BACKGROUND

On or before September 8, 1999, Castle entered into a contract ("Contract") with Illinois School District No. 148 ("District No. 148") to build the New Lincoln School ("Project"). This matter stems from Castle's purported failure to pay Doing Steel, a structural steel subcontractor, for the work it performed under a subcontract agreement ("Subcontract") for the provision of steel work on the Project. On July 15, 2002, Doing Steel filed its first amended complaint against Defendant Castle Construction Corporation ("Castle") alleging breach of contract (Count I), conversion (Count II), and breach of fiduciary duty under Section 21.02 of the Illinois Mechanics Lien Act, 770 Ill. Comp. Stat. Ann. 60/21.02 (2002) (Count III). Castle subsequently filed a motion to dismiss Counts II and III, which we granted on November 21, 2002. *See Doing Steel, Inc. v. Castle Construction Corp.*, 2002 WL 31664476

40

(N.D.Ill. Nov. 21, 2002). With respect to Count II, conversion, we held that Doing Steel was unable to properly plead that the money at issue at all times belonged to Doing Steel.

On March 19, 2003, Doing Steel filed a motion for leave to file its second amended complaint alleging breach of contract (Count I), and conversion (Count II). With respect to Count II, conversion, Doing Steel contends that newly discovered evidence demonstrates that the money in question did in fact at all times belong to Doing Steel. The new evidence on which Doing Steel relies was revealed during the depositions of Robert Gates, Castle's Executive Vice President, Chief Operating Officer and Project Manager, and David Paukner, principal of the Project's architecture firm of Detella, Planera & Paukner. These depositions took place in early 2003.

According to Gates, the Contractor's Affidavits Castle submitted to District No. 148 certified that Doing Steel had completed the work identified in each Affidavit in accordance with all relevant contracts and that Castle was requesting the identified dollar amount from District No. 148 for the purpose of paying Doing Steel. Gates further averred that the Certificates for Payment that Castle signed certified to District No. 148 that all money previously requested for payment to Doing Steel had in fact been paid to Doing Steel. Paukner, whose firm served as District No. 148's agent and authorized representative on the Project, stated that District No. 148 relied on the Contractor's Affidavits and Certificates of Payment as proof that Doing Steel had completed its work satisfactorily and that Castle was required to pay Doing Steel the full dollar amounts Castle had identified as being owed to Doing Steel. The Contract between District No. 148 and Castle required Castle to pay Doing Steel the money Castle requested and received from District No. 148 on Doing Steel's behalf. If Castle failed to make payments to Doing Steel, District No. 148 was entitled to not certify payments or to nullify Certificates of Payment to Castle. Although Castle did not pay Doing Steel the full amount to which it alleges that it was entitled, District No. 148 never took such action.

## II. ANALYSIS

Generally, a motion for leave to amend is liberally granted. *See* Fed. R. Civ. P. 15(a). However, a court may deny such a motion if the proposed amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). An amendment is futile when it cannot withstand a motion to dismiss. *See Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994). Therefore, we may deny Doing Steel's motion for leave to file its second amended complaint if its conversion claim cannot withstand a motion to dismiss.

The purpose of a motion to dismiss under Rule 12(b)(6) is to decide the adequacy of the complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, we must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995), *aff'd* 161 F.3d 443 (7th Cir. 1998), *cert. denied* 528 U.S. 810 (1999). Therefore, a complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Under Illinois law, conversion is an intentional, unauthorized act that deprives a person of his property. *See In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985). To state a claim for conversion, a plaintiff must show "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the property of another; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property; and (4) a demand by plaintiff of possession thereof." *Eggert v. Weisz*, 839 F.2d 1261, 1264 (7th Cir. 1988) (quoting *de St. Aubin v. Johnson*, 502 N.E.2d 360, 364 (Ill. App. Ct. 1986)).

3

There are limited circumstances under which money can be the subject of a conversion claim. *See In re Thebus*, 483 N.E.2d at 1260-1261. Generally, money is not recoverable under the tort of conversion unless the sum of money can be described as specific chattel. *See id.* Money may be characterized as specific chattel if it is "a specific fund or specific money in coin or bills." *Sutherland v. O'Malley*, 882 F.2d 1196, 1200 (7th Cir. 1989) (citing *Mid-America Fire & Marine Ins. Co. v. Middleton*, 468 N.E.2d 1335, 1339 (Ill. App. Ct. 1984)). Although it is not necessary that the money be specifically segregated or earmarked, the money must be a determinate amount and identifiably distinct. *See 3 Com Corp. v. Electronics Recovery Specialists, Inc.*, 104 F.Supp.2d 932, 940 (N.D.Ill. 2000); *see also Roderick Dev. Inv. Co., Inc. v. Cmty. Bank of Edgewater*, 668 N.E.2d 1129, 1134 (Ill. App. Ct. 1996). Furthermore, the money at issue must have "at all times belonged to the plaintiff." *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) (quoting *In re Thebus*, 483 N.E.2d at 1261). Indeed, a conversion action cannot successfully be maintained "for money represented by a general debt or obligation." *In re Thebus*, 483 N.E.2d at 1261.

The money at issue in this case does not fall within the limited circumstances under which money can be subject to a claim for conversion. While the money in question may be considered specific chattel as a specific fund, it did not at all times belong to Doing Steel. In fact, the money only represents an obligation Castle had under the Subcontract to pay Doing Steel upon the "*satisfactory performance*" of its work. Subcontract at Art. 4 (regarding contract price), Art.5, §2.5 (regarding progress payments) (emphasis added). Although the Contract between Castle and District No. 148 required Castle to pay Doing Steel the money Castle requested and received from District No. 148 on Doing Steel's behalf., the terms of the Subcontract placed conditions on Doing Steel's receipt of those payments.

4

According to the Subcontract, Doing Steel was to provide "all work necessary or incidental to complete the labor, material, equipment and supplies necessary to . . . furnish and install all structural and miscellaneous steel work" on the Project. *Id.* at Art.15, §2. Doing Steel agreed that time was of the essence for both parties, and that it would comply with Castle's schedule of work. *See id.* at Art.3, §1. In turn, Castle was to pay Doing Steel $721,000.00 "for the *satisfactory performance*" of its work. *Id.* at Art.4 (emphasis added). Castle would make progress payments to Doing Steel for the "*satisfactory performance*" its work no later than ten business days after Castle received payment from District No. 148 for such work. *Id.* at Art.5, §2.5 (emphasis added). Castle could assess liquidated and other damages against Doing Steel "for delay beyond the completion date" set forth by the Subcontract. *Id.* at Art.6, §5. Castle could also withhold payment from Doing Steel for costs associated with failure to perform in accordance with the Subcontract. *See id.* at Art.10, §§1.1, 1.2, 2.2.

On March 3, July 7, and July 31 of 2000, Castle submitted Contractor's Affidavits to District No. 148 in which it identified the payments due to all contractors and subcontractors, including Doing Steel. *See* Compl., Count II, ¶¶21-34. According to the Affidavits, Doing Steel was due a total of $114,520.50. *See id.* at ¶¶ 21, 26, 31. Castle sent District No. 148 each Affidavit along with a Breakdown Sheet and Certificate for Payment. *See id.* at ¶¶ 22, 27, 32. District No. 148 then paid Castle on behalf of all contractors and subcontractors named in each Affidavit, including Doing Steel. *See id.* at ¶¶23, 28, 33. Each check District No. 148 issued correlated with the dollar amounts each Contractor's Affidavit identified as being owed to each contractor and subcontractor. *See id.* at ¶16. While Castle received a total of $114,520.50 on Doing Steel's behalf, it did not subsequently pay any of that amount to Doing Steel. *See id.* at 37-38.

Regardless of whether Castle was justified in failing to pay Doing Steel, the terms of the Subcontract make clear that the money in question did not at all times belong to Doing Steel. Doing

Steel was entitled to the money only upon the successful performance of its duties. The Contract between Castle and District No. 148 does not alter our conclusion. Indeed, Doing Steel's rights to the money at issue stem from its Subcontract with Castle, not from the Contract between Castle and District No. 148.[1] Under the Contract, District No. 148, not Doing Steel, had the power to remedy the failure of Castle to pay Doing Steel by either not certifying payments or nullifying payments to Castle. District No. 148, however, never took such action. Doing Steel cannot successfully maintain a conversion action against Castle for the payment of money conditioned on the satisfactory performance of its work. *See In re Thebus*, 483 N.E.2d at 1261; *see also Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002).

## III. CONCLUSION

For the foregoing reasons, Doing Steel's motion for leave to file its second amended complaint is denied. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 5/28/03

---

[1] Doing Steel points to Article 5.3.1 of the General Conditions which governed the Contract between District No. 148 and Castle which provides that "[e]ach subcontract agreement . . . shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner." While Castle had the right to request and receive payment from District No. 148, Doing Steel has not pointed to any provision in the Contract that states Castle was, at all times, entitled to the money it requested and received from District No. 148. To the contrary, the Contract permitted District No. 148 to withhold or nullify payments to Castle.

6