Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1674 | **DATE** | 2/18/2004 |
| **CASE TITLE** | Doing Steel, Inc. vs. Castle Construction Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: This Court denies Doing Steel's motion for partial summary judgment (53-1 & 54-1, & 70-1) or, in the alternative, to Strike (53-2, 54-2, & 70-2) Castle Construction Corporation's First and Second Affirmative Defenses.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 18 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 90 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | 2/18/2004 date mailed notice | |
| GL | courtroom deputy's initials | | GL mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

DOING STEEL, INC., a Missouri )
corporation, )
 )
        Plaintiff, )
 )
v. ) Case No. 02 C 1674
 )
CASTLE CONSTRUCTION )
CORPORATION, an Illinois corporation, )
 )
        Defendant. )
 )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff, Doing Steel, Inc., ("Doing Steel") filed a three-count complaint against Defendant Castle Construction Corporation ("Castle") alleging breach of contract, conversion, and breach of fiduciary duty. In an earlier opinion, we dismissed Doing Steel's conversion and breach of fiduciary duty claims. *See Doing Steel, Inc. v. Castle Const. Corp.*, No. 02-C-1674, 2002 WL 31664476 (N.D. Ill. Nov. 21, 2002). Doing Steel then filed the present Motion for Partial Summary Judgment or, In the Alternative, to Strike Castle Construction Corporation's First and Second Affirmative Defenses. For the reasons set forth below, we deny both the motion for partial summary judgment as well as the motion to strike.[1]

## BACKGROUND

The following facts, unless otherwise specified, have been culled from the parties' Local Rule

---

[1] Although Doing Steel has labeled its motion as one for summary judgment or, in the alternative, to strike, we confine our discussion to whether summary judgment is appropriate. Federal Rule of Civil Procedure 12(f) requires that a motion to strike be presented "by a party within 20 days after the service of the pleading upon the party." Doing Steel's motion was presented almost two months after Castle filed its responsive pleading, well after the twenty day deadline. We therefore need not consider the merits of the motion to strike.

56.1 Statements of Material Facts. In 1999, Defendant Castle Construction entered into a contract with Illinois School District #148 to build a school in Dolton, Illinois. On September 8, 1999, Plaintiff Doing Steel entered into a subcontract agreement with Castle for steel work to be done in connection with the school construction project. (Pl.'s L.R. 56.1 Statement, Ex. A) ("Subcontract"). Castle agreed to pay $721,000 to Doing Steel for "satisfactory performance" of Doing Steel's obligations under the Subcontract. (Subcontract, Art. 4.) Castle also authorized Doing Steel to perform extra work by approving change orders to the original Subcontract agreement in the amount of $9,146.95,[2] for a total contract price of $730,146.95.

Doing Steel began work on the project in December 1999 and stopped working in December of 2000. On January 5, 2001, Castle issued a notice terminating Doing Steel as a subcontractor. Doing Steel filed the present lawsuit in July 2002, claiming that it stopped working on the project in 2000 because it had not been paid by Castle for ten months and that it is still owed $220,651.95 under the Subcontract. (Pl.'s L.R. 56.1 Statement ¶ 8.) Both parties agree that Castle requested and received from the school district payments "based on the amount of structural steel in place" totaling $114,520.50, and that Castle never passed that money on to Doing Steel. Castle claims that the reason Doing Steel was not paid was because Doing Steel had not provided "satisfactory performance" as required by the Subcontract because it failed to meet construction deadlines, interfered with the work of other contractors, and ultimately left some of its work unfinished. (Def.'s L.R. 56.1 Statement ¶ 8.) Doing Steel, on the other hand, maintains that it satisfactorily performed most of its contractual obligations. (Pl.'s L.R. 56.1 ¶ 10.)

---

[2] Doing Steel claims that the excess amount authorized was $11,447.95. The documentation that Doing Steel provides, however, adds up to only $9,146.95. Doing Steel accidentally provided two copies of one of the change orders and thus added that charge into its calculation of the total amount of the change orders twice.

There are several areas of disagreement between the parties. First, they dispute the amount of work Doing Steel left unfinished after Castle terminated Doing Steel from the school project. Castle claims that Doing Steel never provided or installed aluminum railings, as was required by the Subcontract. (Def.'s L.R. 56.1 Statement ¶¶ 6-7.) The parties agree that Doing Steel never fabricated or installed any aluminum for the school project. *Id.* However, Doing Steel denies that it was required to do so, claiming that it works only with steel, that it is "neither an installer nor fabricator of aluminum," and that it was only contractually required to perform work related to furnishing and installing steel work for the school project. (Pl.'s L.R. 56.1 Statement ¶¶ 6-7.)

The parties also disagree over whether Doing Steel completed its work in a timely manner. Doing Steel claims that it worked "continuously" on the school project from December of 1999 to December of 2000. (Pl.'s L.R. 56.1 Statement ¶ 8.) Castle responds that Doing Steel began work on the project over one month late, created numerous other delays, and that those delays prevented other contractors from beginning their portions of the school project as scheduled. (Def.'s L.R. 56.1 Statement ¶ 21.) Ultimately, Castle asserts that it was required to make up for Doing Steel's tardiness, incurring "$144,655.27 in acceleration costs stemming from overtime paid to subcontractors, roofer expenses for changing the sequence of work, overtime paid to Castle, and overhead expenses" in order to complete the school project on time. (Def.'s L.R. 56.1 Statement ¶ 25.)

Doing Steel brought the present action in 2002, alleging that Castle breached the Subcontract by failing to pay Doing Steel. Castle asserts three affirmative defenses based on Doing Steel's alleged failure to perform under the Subcontract. Two of Castle's affirmative defenses are the subject of the present motion for summary judgment.[3]

---

[3]Doing Steel styles its motion as one for "partial" summary judgment on Castle's first two affirmative defenses. However, at the end of its motion, Doing Steel requests that we "enter judgment in its favor and against Defendant Castle Construction, [and that we] grant Doing Steel damages." (Mem.

3

# ANALYSIS

I.      **Standard of Review: Motion for Summary Judgment[4]**

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard places

---

in Support of Mtn. for Sum. J. at 14-15.) Because Doing Steel does not present any substantive reasons why it is entitled to summary judgment on its own breach of contract claim, we do not consider that claim in the context of the present opinion. Likewise, Doing Steel's motion requests summary judgment with regard to Castle's first and second affirmative defenses, but includes discussion that pertains to Castle's third affirmative defense. Doing Steel has not officially moved for summary judgment on Castle's third affirmative defense or provided any documentation which would support such a motion. We therefore focus solely on the issue of whether summary judgment is proper with regard to Castle's first and second affirmative defenses.

[4]We note Doing Steel's partial failure to comply with the straightforward requirements of Local Rule 56.1. The Northern District promulgated Local Rule 56.1 "to assist the court in quickly and effectively identifying the disputed and undisputed material facts. It is designed to conserve judicial time and resources." Sunil R. Harjani, *Local Rule 56.1: Common Pitfalls in Preparing a Summary Judgment Statement of Facts*, CBA Record, Oct. 2002, at 42 (citing *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000)). The Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment." *Bordelon*, 233 F.3d at 527 (citations omitted).
    Local Rule 56.1(a)(3) requires the movant to file a statement of material facts that "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting material relied upon to support the facts set forth in that paragraph." Doing Steel complied with that portion of the rule. The nonmoving party must then file a similarly structured, concise response to the movant's statement and submit a statement "of any additional facts that require the denial of summary judgment." L.R. 56.1(b)(3)(B). Castle complied with this portion of the rule, submitting several paragraphs of additional facts to support its position.
    Doing Steel, however, did not follow the third requirement of the rule, which provides that "[i]f additional material facts are submitted by the opposing party . . . the moving party may submit a concise reply," also in the form of short numbered paragraphs. L.R. 56.1(a)(1). The rule further requires that, "[a]ll material facts set forth in the [nonmoving party's response] will be deemed admitted unless controverted by the statement of the moving party." *Id.* Although Doing Steel filed a reply in which it rebutted several of Castle's legal and factual arguments, it did not submit a paragraph by paragraph response to Castle's statement of additional material facts, as is required by Local Rule 56.1. Thus, we may, in our discretion, deem Castle's statement of additional material facts admitted for purposes of this opinion. *Metropolitan Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002). Because Doing Steel has complied with most of Rule 56.1, we decline to do so in this case. The parties are warned, however, of the potential consequences of failure to comply with Rule 56.1 in the future.

4

the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted). Once the moving party has met this burden of production, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

## II. Discussion

### A. First Affirmative Defense: Set Off for Costs Incurred by Castle After Doing Steel's Termination

In its first affirmative defense, Castle claims that it is entitled to a set off against any damages awarded to Doing Steel. Upon its termination from the Subcontract, Castle argues, Doing Steel became liable for costs incurred in completing Doing Steel's assigned tasks. Doing Steel does not contest the legal sufficiency of Castle's defense since the Subcontract explicitly allows Castle to recover the costs of performing Doing Steel's work upon Doing Steel's termination. (Subcontract, Art. 10.1.2.) Rather, Doing Steel argues that summary judgment is proper because Castle has not presented sufficient evidence to create a genuine issue of material fact for trial on the issue of whether Castle is entitled to any post-termination costs.

As stated above, in assessing a summary judgment motion, we must first consider whether Doing Steel has met its initial burden of production, identifying evidence that would demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Doing Steel attempts to meet its burden by admitting that when it ceased working on the project it

5

had not completed installation of a particular handrail (thereby negating any fact issue with regard to that task) but arguing that it left no other work unfinished.[5] (Pl.'s L.R. 56.1 Statement ¶ 11) ("[a]t the time it ceased work, the only item remaining under the Subcontract Agreement was the fabrication and installation of twenty linear feet of handrail."). However, Doing Steel does not point to any "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file'" that would demonstrate the absence of a genuine issue of material fact on the issue of whether it had any other work left to perform. *Celotex*, 477 U.S. at 323. The only evidentiary authority that Doing Steel cites in its Local Rule 56.1 Statement is a citation to its own Statement of *Contested* Issues of Fact and Law in the parties' Final Pretrial Order. (Pl's L.R. 56.1 Statement, Ex. F ¶ 60) (emphasis added). In that portion of the final pretrial order, Doing Steel asserts that, "[t]he completion of these handrails had no structural significance to the building, in no way impeded any other contractor's or subcontractor's completion of their work, and the cost of completing the handrails was approximately $1496.00." *Id.* This statement has nothing to do with the issue raised on summary judgment by Doing Steel, i.e. whether Castle could demonstrate at trial that it incurred costs in completing Doing Steel's work (aside from the costs of installing the handrail). Thus, Doing Steel does not even meet its basic burden of "'showing' - - that is, pointing out to the district court - - that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Although this is a sufficient ground upon which to deny summary judgment, we also observe that Castle has met its burden of setting forth specific facts to show that there is a genuine issue of material fact on the issue of post-termination costs. Fed. R. Civ. P. 56(e). In its response to Doing Steel's motion, Castle argues that, in addition to the cost of installing the handrail, Doing Steel was

---

[5]Incidentally, if we accept Doing Steel's claims as true, then we would be inclined to grant summary judgment in favor of *Castle*, since Doing Steel admits to liability for the cost of the handrail installation.

responsible for, and failed to complete, some aluminum work on the school project. Doing Steel retorts that it is impossible for Castle to recover under the Subcontract for aluminum work because 1) Doing Steel is not a fabricator of aluminum; and 2) Article 15.2 of the Subcontract specifically provides that the scope of work is only to "furnish and install all structural and miscellaneous *steel* work." (Pl.'s L.R. 56.1 Statement ¶¶ 6-7) (emphasis in original). There are several problems with these arguments. First, Doing Steel points to no evidence to support its assertion that it is not a fabricator of aluminum. Second, although Doing Steel correctly cites one portion of Article 15.2 of the Subcontract, it fails to note the remainder of that Article. Article 15.2 also requires Doing Steel to perform all work in accordance with "specification division 5." Specification division 5A, which arguably could be considered a part of specification division 5,[6] describes requirements for performing aluminum work. (Def.'s L.R. 56.1 Statement, Ex. Y, § 5A.07) (providing that "[w]here aluminum is to be fastened to steel supporting members or other dissimilar metal parts, keep aluminum from direct contact with such parts . . ."). While this portion of the Subcontract does not necessarily *prove* that Doing Steel was required to produce aluminum, it suggests that supplying aluminum may have been one of Doing Steel's contractual duties. Thus, there is a genuine issue of material fact for trial as to what costs (if any) Castle incurred in performing Doing Steel's work after Doing Steel's termination. Summary judgment is therefore denied with respect to Castle's first affirmative defense.

---

[6] The parties do not present arguments on the issue of whether, by contracting to complete the work listed in specification division 5, Doing Steel was also bound to perform the work described in specification division 5A. We therefore do not consider that issue in the present motion, noting only that Castle has presented enough evidence to create a genuine issue of material fact for trial.

7

B)   Second Affirmative Defense: Set Off for Delay

In its second affirmative defense, Castle claims that it is entitled to damages[7] in the amount paid by Castle as a result of Doing Steel's alleged delays in completing its work on the school project. Doing Steel believes that the Subcontract does not allow for recovery for delays in performance. We disagree. The Subcontract is replete with covenants regarding the timing of the construction project. For example, Article 3.1 of the Subcontract states that, "[t]ime is of the essence for both parties." In Article 3.2, Doing Steel agreed to be bound by Castle's schedule of work, and, in Article 3.4, it promised that it would coordinate its work with other contractors "so as not to delay, interfere or damage such other contractors' or suppliers' work or performance." Finally, Article 10.1.1 of the Subcontract specifically enumerates remedies that are available in case Doing Steel fails to maintain Castle's schedule of work.

In spite of all of the contractual promises Doing Steel made to complete its work on time, Doing Steel claims that Castle cannot recover for delay and overtime costs because Article 10.1.2 of the Subcontract limits contractual remedies to those costs incurred by Castle in "performing [Doing Steel's] work." Presumably, Doing Steel's rationale is that, even if Castle paid overtime to other contractors to make up for Doing Steel's tardiness, those payments ultimately went to complete the

---

[7]Castle labels its second affirmative defense as one for "damages." This is a misnomer. There is no such thing as an affirmative defense for "damages" under federal law. Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure, Civil 2d.*, § 1271 (1990) (noting that federal common law dictates the types of claims that may be asserted as affirmative defenses). In fact, Castle seems to be asserting yet another set off defense, claiming that it is entitled to a set off against any damages awarded to Doing Steel because of Doing Steel's alleged delays in performing on the Subcontract. *See Codest Eng'g v. Hyatt Int'l Corp.*, 954 F. Supp. 1224, 1230 (N.D. Ill. 1996) (recognizing set off as an affirmative defense in a breach of contract action). Castle is not prejudiced by this mistake in nomenclature, however, since a failure to correctly label a defense is not grounds for dismissal of that defense as long as the opposing party is not prejudiced by the mistake. Wright & Miller, § 1274. Here, Doing Steel is not prejudiced by the mistake because the substance of Castle's defense is the same regardless of whether it is labeled as a claim for damages or as one for set off. We therefore consider the merits of Doing Steel's summary judgment motion with regard to Castle's second affirmative defense.

8

work of those contractors and not toward performing Doing Steel's work. Because Article 10.1.2 does not specifically authorize Castle to collect damages for the overtime charges, Doing Steel reasons, Castle has no recourse for Doing Steel's delays under the Subcontract. Again, we disagree. One of Doing Steel's contractual responsibilities was to maintain the schedule of work set by Castle for the school project. (Subcontract, Article 3.2.) Doing Steel's alleged failure to do so constituted a failure to perform its work. Thus, any damages incurred by Castle in remedying that situation can be considered a cost of "performing [Doing Steel's] work."

Furthermore, under Illinois law, a contract does not limit the type of relief available to a party unless the contract itself "clearly indicate[s] that the intent of the parties was to make the stipulated remedy exclusive." *Board of Regents v. Wilson*, 326 N.E.2d 216, 220 (Ill.App.Ct. 1975) (citations omitted); *see also Brian McDonagh, S.C. v. Moss*, 565 N.E.2d 159, 161 (Ill.App.Ct. 1990) (noting that merely providing for one type of remedy in a contract "does not preclude other remedies available to them in the event of a breach."). Doing Steel does not argue that the remedies listed in the Subcontract were meant to be exclusive, nor is there any indication in the Subcontract itself that the parties intended to preclude other remedies. We therefore find that the Subcontract does not preclude Castle's second affirmative defense.

Turning then to the factual sufficiency of Castle's second affirmative defense, Doing Steel once again fails to meet its initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In its summary judgment motion, Doing Steel never actually denies that it failed to comply with Castle's schedule of work, asserting simply that it "continuously performed" work on the school project. (Pl.'s L.R. 56.1 Statement ¶ 8.) The bare assertion that it "continuously performed" does not speak to the issue of whether Doing

Steel caused any delays on the project, and certainly does not suggest the absence of a genuine issue of material fact on the issue.

Furthermore, Doing Steel offers only one piece of affirmative evidence in support of its assertion that it "continuously performed." Specifically, Doing Steel provides invoices, which were submitted by Castle to the school district, in which Castle requested payment for work performed by Doing Steel. Doing Steel argues that these requests are evidence of Doing Steel's satisfactory performance of the Subcontract. It is true that the pay requests may constitute evidence at trial on the question of whether Doing Steel performed some of its tasks under the Subcontract. However, the pay slips do not speak at all to the issue of whether or not Doing Steel performed some its work late or whether Castle incurred costs as a result of those alleged delays. Thus, the submissions do not demonstrate the absence of a genuine issue of material fact with regard to Castle's second affirmative defense.

Furthermore, we note that Castle has met its burden of setting forth specific facts showing that there is a genuine issue for trial on its second affirmative defense. *See* Fed. R. Civ. P. 56(e). Castle submitted a stack of invoices from various contractors purporting to catalogue the overtime costs incurred by Castle in correcting Doing Steel's delays. In addition, Castle provides deposition transcripts of Robert Gates, Castle's Vice President, and Reid Specht, Castle's Superintendent, which detail the costs associated with Doing Steel's alleged failure to maintain Castle's schedule of work.

Doing Steel attempts to rebut much of this evidence by challenging its admissibility at trial. It is true that, in ruling on a motion for summary judgment, a court may only consider evidence that would be admissible at trial. Fed. R. Civ. P. 56(e) (requiring that supporting affidavits "shall set forth such facts as would be admissible at trial."). Doing Steel misses the Seventh Circuit's

10

pronouncement, however, that "[t]he evidence need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content." *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). For example, Doing Steel challenges the submission of invoices which purport to reflect overtime costs incurred by Castle in making up for Doing Steel's failure to comply with the construction schedule. Doing Steel argues that we should disregard these documents because they contain no language linking the overtime charges with Doing Steel's alleged delays. In essence, Doing Steel is claiming that we should not consider those documents because they are not properly authenticated. *See* Fed. R. Evid. 901(a). While it is true that these documents would need to be authenticated to be admissible at trial, the only relevant issue for purposes of summary judgment is whether their content is admissible, which it is. For example, Castle could call the person who performed the overtime work to testify that he did the work at a given cost and then call someone else to demonstrate that the overtime work was necessary as a result of Doing Steel's delays. We may therefore consider the invoices for purposes of the present motion.

Doing Steel advances similar faulty evidentiary arguments with regard to the remainder of Castle's proffered evidence. Since Doing Steel does not cite to any evidence that is inadmissible in content, however, we consider all of the evidence put forth by Castle in considering the merits of Doing Steel's motion for partial summary judgment. We find that Castle has more than met its burden of showing that there is a genuine issue of material fact with regard to Castle's second affirmative defense.

## **CONCLUSION**

For the foregoing reasons, this Court denies Doing Steel's Motion for Partial Summary Judgment or, In the Alternative, to Strike Castle Construction Corporation's First and Second Affirmative Defenses. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 2/18/04